UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA AMR,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

Case No. 17-10349

Stephanie Dawkins Davis
United States Magistrate Judge

**OPINION AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 18, 19)**

## I.    PROCEDURAL HISTORY

### A.    <u>Proceedings in this Court</u>

On February 3, 2017, plaintiff Brenda Amr filed the instant suit. (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Thomas L. Ludington referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability and disability insurance benefits. (Dkt. 4). On April 18, 2017,

the parties filed a notice of consent to this Magistrate Judge's authority, which was

signed by Judge Ludington on May 15, 2017. (Dkt. 15, 16). This matter is before

the Court on cross-motions for summary judgment. (Dkt. 16, 18). A hearing on

the motions was held November 21, 2017. (Dkt. 21).

B.     Administrative Proceedings

Plaintiff filed the instant claim for a period of disability and disability insurance benefits on December 9, 2013.  (Tr. 13).[1]  The claim was initially disapproved by the Commissioner on March 4, 2014.  (*Id.*).  Plaintiff requested a hearing and on September 15, 2015, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Richard Sasena, who considered the case de novo.  (*Id.*).  In a decision dated November 17, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 26).  Plaintiff requested a review of this decision.  (Tr. 9).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on December 19, 2016, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, plaintiff's motion for summary judgment is **DENIED,** and Defendant's motion for summary judgment is **GRANTED**, and the findings of the Commissioner are **AFFIRMED**.

## II.     ALJ FINDINGS

Plaintiff, born in 1961, was 44 years old on the alleged disability onset date.  (Tr. 55).  Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2010.  (Tr. 15).  Plaintiff has past relevant work as a credit

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to the same are identified as "Tr. __", referring to the administrative record page number found in the lower right corner of each page.

processor.  (Tr. 24).  The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity from her alleged onset date of January 1, 2006, through her date last insured ("DLI") of June 30, 2010.  (*Id.*).  At step two, the ALJ found that plaintiff's arthritis, diabetes mellitus type 2 ("diabetes"), and chronic obstructive pulmonary disease ("COPD") were "severe" within the meaning of the second sequential step.  (*Id.*).  The ALJ also found several nonservere impairments, meaning they were found to cause no more than a minimal limitation of physical or mental ability to do basic work activities or would not last 12 months, including:  obesity, a fatty liver, hypothyroidism, high blood pressure, varicose veins, heart condition, vitamin D insufficiency, carpal tunnel syndrome, hearing loss, fibromyalgia and degenerative disc disease.  (Tr. 16).  However, at step three, the ALJ found no evidence that plaintiff's impairments, either singly or in combination, met or medically equaled one of the listings in the regulations.  (*Id.* at 18).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could perform occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  She should have avoided concentrated exposure to vibrating tools.

> The claimant needed to change positions after every 15
> minutes or so.

(*Id.* at 20).  At step four, the ALJ found that plaintiff was able to perform past

relevant work as a credit processor.  (*Id.* at 24).  The ALJ thus determined plaintiff

was not disabled.  (*Id.* at 26).

## III. DISCUSSION

### A.  Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two: If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three: If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

1.     RFC

a.     Light Work vs. Sedentary Work

i.     Parties' Arguments

Plaintiff argues that the medical evidence supports a finding of a sedentary work level, rather than light work, prior to the DLI. (Dkt. 18, Pl.'s Brief, at p.13). She cites to reports from Dr. Portney, Dr. Mechael, and Dr. Haenick to establish disabling limitations. (*Id.*). In a June 16, 2010 report from Dr. Portney, he indicated plaintiff suffered from arthralgia, possible fibromyalgia, and possible sleep apnea. (Tr. 254). During that visit, plaintiff mentioned problems with pain in her wrists and knees that she had experienced for years but which had gotten worse over the last year. (*Id.*). The physical exam noted tenderness in the trapezius muscle along her spine, sacroiliac joints, and trochanteric bursa along decreased lumbar spine flexion. (Tr. 255). Dr. Mechael noted knee, hip, and shoulder pain in a July 1, 2010 report. (Tr. 661). She claims that these reports

show that her knee and back issues prevented her from performing the standing/walking limitations of light work.  Plaintiff also notes that her carpal tunnel syndrome had been affecting her since 2008.  (Dkt. 18, at p.13).

To buttress her contention that the record supports a sedentary RFC, plaintiff cites to Dr. Michael Haenick's report that prior to June 30, 2010, plaintiff would likely be off task 25% of the workday and would likely be absent more than four days per month.  (Tr. 642).  Dr. Haenick listed the following limitations: sitting about 2 hours in an 8-hour workday; standing/walking about 2 hours in an 8-hour workday; needing periods of walking around; unscheduled breaks; only rarely lifting 10 pounds; and only 10% bilateral useful ability in the upper extremities (i.e. "occasionally").  (Tr. 643).  Plaintiff adds that her diabetes caused a disabling limitation based on a June 2009 report that noted uncontrolled diabetes.  (Dkt. 18, at p. 13).

The Commissioner argues that substantial evidence supports the ALJ's RFC finding that plaintiff was capable of light work prior to the date last insured. Regarding plaintiff's diabetes, the ALJ noted periods of uncontrolled diabetes after the relevant period, but that her control prior to the DLI was unclear.  Additionally, the ALJ noted that there was no evidence of hospitalization or regular treatment with an endocrinologist for her diabetes.  (Dkt. 19, Dft.'s Brief, at p. 6).  The Commissioner cites numerous records establishing that plaintiff did not have

complications from diabetes. (*Id.*; Tr. 21, 531-532, 534, 539, 553, 559, 561, 563, 586).

Regarding plaintiff's arthralgia and complaints of pain, the Commissioner argues that since the evidence consists of her statements of pain and other symptoms alone, the evidence does not establish disability. In January 2010, plaintiff complained of pain, but an x-ray showed no abnormalities; in June 2010 Dr. Portney noted that plaintiff complained of pain, and on examination she had a 5-/5 psoas and deltoid strength and no synovitis (*See* Tr. 255); on July 1, 2010, plaintiff denied muscle pain or stiffness and appeared to claim that she swam for exercise; plaintiff also denied pain and stiffness in a follow-up to a July 2010 doctor visit. (Dkt. 19, at pp. 6-7).

Overall, the Commissioner contends that much of the evidence plaintiff cites to support her claims is based on her subjective complaints rather than objective medical opinion, and is contradictory. For example, Dr. Mecheal's July 2010 note was for a visit due to cough and urinary tract infection, not pain although she complained of pain. (*Id.* at p. 8; Tr. 661). In her follow-up visit, she denied muscle pain or weakness. (*Id.*; Tr. 660).

The Commissioner further advances that because plaintiff did not connect her complaints to functional limitations, she cannot establish any error in the ALJ's decision. (*Id.* at p. 7) (citing *Turvey v. Comm'r of Soc. Sec.*, 2013 WL 3271194, at

*5 (E.D. Mich. June 27, 2013). Additionally, the Commissioner points out that Dr. Haenick's 2014 and 2015 medical opinions were appropriately given little weight by the ALJ because they came well after the relevant period (DLI June 30, 2010) and had internal inconsistencies. (Dkt. 19, at p. 8).

ii.     Analysis

The ALJ's determination that plaintiff could perform light work through the DLI is supported by substantial evidence. The "light work" category is described as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The regulations describe "sedentary" work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other

sedentary criteria are met.

20 C.F.R. 404.1567(a).  SSR 83-12 explains the difference between "frequent" and

"occasionally":

> "Frequent" means occurring from one-third to two-thirds of the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.  Sitting may occur intermittently during the remaining time.  The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping.  Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.  They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.
>
> "Occasionally" means occurring from very little up to one-third of the time.  Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8–hour workday.  Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-12.

The medical evidence supports a light work RFC through the date last

insured.  Plaintiff claimed that she was limited in her ability to work by diabetes,

high blood pressure, joint pain, degenerative disc disease, carpel tunnel syndrome,

chronic obstructive pulmonary disease, varicose veins, thyroid disease and hearing

loss. (Tr. 20). The ALJ found plaintiff's subjective complaints concerning the

extent and severity of the symptoms that limited her ability to do light work to be

not entirely credible. (Tr. 21). The record does not support a finding that these

particular problems prevented her from working at the "light work" level.

While at times plaintiff's diabetes was uncontrolled after the relevant period,

the degree of control during the relevant period is unclear. (Tr. 21). As the ALJ

noted, plaintiff's diabetes diagnosis dates back to 2001 or 2002, and pointed out

further that as of February 29, 2009, her treatment consisted of taking oral tablets

of Metformin, Glipizide and Actos. (*Id.*; Tr. 218). Notably, she did not begin

taking insulin – suggesting a progression of the condition – until after the DLI, and

the record contains no evidence of hospitalizations for ketoacidosis or regular

treatment with an endocrinologist during the relevant period. (*Id.*) Moreover, even

if her diabetes was uncontrolled during the relevant period, the record does not

establish that she suffered complications from her diabetes that would cause a

disabling limitation. (Tr. 21); *see Williams v. Comm'r of Soc. Sec.*, 2015 WL

5559771, at *6-7 (M.D. Fl. Sept. 21, 2015) (upholding RFC where claimant

"suffered from diabetes with some lower extremity parasthesias, [but] there [was]

no evidence of complications or organ damage and Plaintiff has maintained full

strength in the lower extremities and does not require an assistive device for

ambulation."). There is no medical evidence of complications prior to the DLI, although at the hearing she alleged that her sugars were uncontrolled prior to the DLI. (Tr. 21).

Plaintiff also testified that her diabetes caused blurred vision, fatigue, and dizziness. (Tr. 44). However, as noted she did not begin taking insulin to treat her diabetes until after the relevant period. (Tr. 579). Evidence of diabetes complications does not appear until April 2014 in a medical opinion that stated that her diabetes caused peripheral neuropathy. (Tr. 436). There is also some evidence of venous insufficiency that the ALJ considered to be possibly caused by diabetes starting in 2014 and 2015. (Tr. 420, 426). However, these dates are well after the DLI. Furthermore, her eye exams appear normal, thus, contradicting her claim that her diabetes caused blurred vision. In August 2010 (after the DLI), an eye examination report showed no evidence of issues, including no retinopathy, except that "not well defined microvascular changes in the capillary bed may be present." (Tr. 319). Therefore, the evidence does not support a finding that her diabetes caused any limitations that prevented her from working at the light work level.

The record also does not support a finding that plaintiff's joint pain caused limitations that prevented her from working at the light work level. There is no evidence in the record to establish that her joint pain prevented her from lifting and carrying up to 10 pounds or from walking most of the day except for her subjective

complaints and the opinion of Dr. Haenick which was properly discounted as discussed more fully below.  Plaintiff was diagnosed with arthritis prior to the DLI. (Tr. 21).  In June 2010 she was diagnosed with arthralgia and possible fibromyalgia, although Dr. Portney noted that he could not diagnose her with fibromyalgia without excluding other possible causes.  (Tr. 254).  In that same document, Dr. Portney notes that she did not have any joint swelling, although she had complained of joint pain.  (*Id.*).  Her physical examination revealed tenderness in numerous muscle groups.  (*Id.*).  Notably, she told Dr. Portney that her pain was constant but variable in degree, but Dr. Portney did not prescribe any medications in spite of her allegations of pain.  (*Id.*).  The SSA guidelines provide that, in determining whether symptoms effect the capacity of the claimant to work, the administration will consider

> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)

20 C.F.R. § 404.1529(c)(3)(iv-vi).  In *Neff v. Colvin*, 2016 WL 4965120, at *5-6 (E.D. Ky. Aug. 25, 2016), the court upheld the RFC determination finding that the claimant's back pain and neuropathy were not disabling because, amongst other

things, the claimant was prescribed no medication. The court agreed with the ALJ that whether a claimant takes medication for an ailment is a proper consideration in determining the RFC. *Id.* Here, any other mention of joint pain in the record either states that plaintiff did not complain of joint pain (*see, e.g.*, Tr. 264—no muscle or joint paint in February 2011), or it is merely her subjective complaint of joint without objective medical evidence to support it.

There is also no evidence in the record that plaintiff's carpal tunnel syndrome caused limitations that prevented her from working at the light work level despite her allegations of pain and limited mobility. She was diagnosed with carpal tunnel syndrome in 2008 or 2009, according to plaintiff. (Tr. 49). She was not taking pain medication, except for Aleve on occasion. (Tr. 432). Further, she declined the suggestion that she start steroid injections for pain in May 2014. (*Id.*). Taking pain medication only on occasion and declining steroid injections in 2014 do not support the claim that her carpal tunnel syndrome prevented her from engaging in light work prior to her DLI. *See Watkins v. Sullivan*, 1991 WL 126535, at *2 (E.D. Ark. Mar. 12, 1991) ("If the claimant were experiencing severe pain, it is reasonable to assume she would seek medical treatment and would be prescribed appropriate pain medication."). In her brief, plaintiff relies on her testimony at the hearing to establish disabling limitations from carpal tunnel syndrome. However, "A claimant's subjective allegations of disabling pain

are insufficient by themselves to support a claim for benefits." *Osdras v. Comm'r of Soc. Sec.*, 89 F.3d 835 (6th Cir. 1996) (citing *Sizemore v. Secretary of HHS,* 865 F.2d 709, 713 (6th Cir. 1988)).  Plaintiff also relies on Dr. Haenick's medical opinion that plaintiff had only 10% bilateral useful ability in the upper extremities. (Pl. Br., Dkt. 18, p. 13).  However, the ALJ accorded Dr. Haenick's opinions little weight because they came well after the relevant period and contained inconsistencies between his records and his opinions, and plaintiff did not challenge the weight assigned to Dr. Haenick's opinions.  (Tr. 23-24).  Where "there is no evidence in the record [linking a claimant's] carpal tunnel syndrome to a limitation in her ability to perform work-related activities," an RFC failing to include such limitation is not erroneous.  *Reynolds v. Colvin*, 2015 WL 2452718, at *6 (D. N.H. May 22, 2015).

According to the record, her COPD symptoms were not of such a degree to prevent her working at the light work level prior to her DLI.  In April 2015, the Sacred Heart Medical Center noted that her last COPD exacerbation was in 2006. (Tr. 506).  Other records state the same.  (Tr. 509 (March 2015), 521 (Dec. 2014), 536 (Feb. 2014)).  Plaintiff has two hospital records for complications due to COPD.  In July 2010, she was admitted having trouble breathing.  (Tr.  22, 290). She was given medication to ease her breathing, and her chest x-ray lacked significant findings.  (Tr. 233-42).  At the second hospital visit in February 2011,

also for difficulty breathing, she was given Albuterol, Atrovent, and Prednisone as treatment. (Tr. 264). The hospital noted that she smoked one pack of cigarettes per day for the last thirty years. (Tr. 265, 22). The ALJ reasoned that plaintiff's continued smoking, which was against medical advice, undercut her credibility regarding the alleged disabling effects of her COPD. (Tr. 22); *see Marshall v. Comm'r of Soc. Sec.*, 2015 WL 777940, at *7 (E.D. Mich. Feb. 24, 2015) (The Sixth Circuit "considers whether a claimant has followed a physician's advice to quit smoking to be a relevant factor in evaluating the claimant's credibility."); *Soto v. Comm'r of Soc. Sec.*, 2014 WL 1576867, at *8 (N.D. Ohio Apr. 18, 2014) ("Non-compliance [with medical advice] is an appropriate ground for adversely assessing a claimant's credibility"); *Kohler v. Colvin*, 2015 WL 3743285, at *8 (S.D. Ohio June 15, 2015) (The ALJ properly considered the plaintiff's non-compliance with doctors' advice, amongst other things, in making credibility determination). Additionally, the ALJ noted that plaintiff had minimal treatment for COPD during the relevant period, and there is no evidence of treatment with a pulmonologist or oxygen treatment. (Tr. 22). Failure to seek treatment for a period of time may be a factor to be considered against a claimant, *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy her condition, *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990); *see also Hansen v. Comm'r of Soc.*

*Sec.*, 2014 WL 2014 WL 5307133, at *7 (E.D. Mich. Oct. 16, 2014) (finding claimant's testimony not credible in part because, while she complained of persistent back pain, there was no evidence of treatment for her back). Here, plaintiff does not claim that she could not have sought medical treatment for her COPD and demonstrated that she had access to medical assistance and had health insurance. Given this evidence, it was appropriate for the ALJ to determine that her COPD did not prevent her from performing work activities prior to the DLI.

Regarding plaintiff's complaints of high blood pressure, varicose veins, thyroid disease, degenerative disc disease, and hearing loss, there is no evidence in the record to establish that the symptoms of these conditions prevented her from working at the "light work" level, nor does she argue so in her brief. (Tr. 16-17). For example, plaintiff had a computerized tomography ("CT") scan due to imbalance and dizziness, but the CT scan showed no abnormalities in her ears and she was able to hear and respond to questions during the hearing. (Tr. 17, 281). Plaintiff's thyroid disease cannot be said to have caused disabling limitations because she was treating it with the medication Levothyroid and the record is devoid of evidence of any complications. (Tr. 16). As to her degenerative disc disease, the ALJ pointed out that evidence of the disease does not appear until around July 2013, well after the DLI, and while the disease is degenerative in nature, the medical evidence does not allow an inference of an onset of a back

impairment prior to the DLI. (Tr. 18). Finally, her diagnoses of variscose veins and venous insufficiency came in 2012. (Tr. 17). Nothing in the record supports disabling complications from these conditions prior to the DLI.

Therefore, based on the record evidence, the ALJ did not err in giving plaintiff a "light work" RFC.

### b. Unskilled Work

Plaintiff claims that the record also supports a finding that she can only perform unskilled work. (Dkt. 18, at p. 14). She states that her chronic pain affects her concentration, and thus she is only capable of unskilled work at best. (*Id.*). She does not cite to any evidence establishing her assertion.

The Commissioner responds that, because plaintiff did not cite to any evidence establishing that she is capable of only unskilled work, the argument is waived. (Dkt. 19, at p. 8); *McPherson v. Kelsey*, 125 F.3d 989, 995-6 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

The Commissioner is correct. Plaintiff provides no argument or citation to support her assertion. It is not for the Court to develop this argument. Under *McPherson*, the argument is waived.

c.    Reaching/Handling/Fingering Limitations

Plaintiff claims it was error for the ALJ to fail to include reaching, fingering, and handling limitations in the hypotheticals to the VE and in the RFC.  (Dkt. 18, at p. 14).  Plaintiff relies on her testimony that she had been having issues with carpal tunnel syndrome since 2008.  (*Id.*).  Plaintiff also cites to a June 2010 report in which she reported pain in her wrists and knees and Dr. Haenick's report stating that she only had 10% bilateral useful ability in her upper extremities.

The Commissioner responds that plaintiff's subjective complaints are not enough to establish a disabling limitation.  (Dkt. 19, at p. 9).  As to the June 2010 report, plaintiff mentioned pain in her wrists but also indicated that her pain was variable in degree.  (*Id.*).  The Commissioner points out that the ALJ accorded Dr. Haenick's medical opinions little weight due to inconsistencies between the opinion and records.  (*Id.*).  For example, Dr. Haenick gave plaintiff the limitation that she had only 10% bilateral useful ability in her upper extremities, but noted elsewhere that she had no significant limitations in reaching, handling, or fingering.  (*Id.*); (Tr. 362).

The Court finds it was not error to fail to include those limitations in the RFC because the medical evidence supporting those limitations comes from Dr. Haenick, whose opinion was appropriately given little weight.  (Tr. 23-24).  The ALJ also gave plaintiff's own testimony little weight.  (Tr. 21).  Moreover, "A

claimant's subjective allegations of disabling pain are insufficient by themselves to support a claim for benefits." *Osdras v. Comm'r of Soc. Sec.*, 89 F.3d 835 (6th Cir. 1996) (citing *Sizemore v. Secretary of HHS,* 865 F.2d 709, 713 (6th Cir. 1988)). Without credible medical evidence to support the limitation, and without credible subjective complaints, the ALJ did not err in failing to include the limitations. *See Green v. Comm'r of Soc. Sec.*, 2013 WL 5516046, at *7 (E.D. Mich. Oct. 4, 2013) ("Plaintiff has provided no evidence to suggest the existence of any functional limitations that the ALJ should have included. Therefore, the ALJ did not err when she chose not to include any such limitations in Plaintiff's RFC."). Further, to the extent that it was error for the ALJ to fail to include those limitations in the hypotheticals to the VE, such error was harmless. Failing to include a limitation in the RFC or hypotheticals to the VE is harmless error when there is no reliable medical evidence in the record to support the limitation. *See Diaz v. Comm'r of Soc. Sec.*, 2016 WL 1375484, at *6 (N.D. Ohio Apr. 7, 2016).

To the extent plaintiff is arguing that her diagnosis of carpal tunnel syndrome is alone enough to add a limitation to the RFC, (*see* Dkt. 20, at p. 2, "Regarding the Plaintiff's carpal tunnel syndrome, there was a diagnosis of this severe impairment and not just subjective complaints"), this argument fails. This Circuit has made clear that simply because plaintiff suffers from certain conditions or carries certain diagnoses does not equate to disability or a particular RFC.

Rather, it is well settled that the mere diagnosis of an impairment is not enough to show disability; a claimant must also prove its severity and functional impact. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). SSR 96-8p provides procedural requirements for determining a claimant's RFC. SSR 96-8p states that "The RFC assessment must be based on *all* of the relevant evidence in the case record" such as "medical history," "lay evidence," and "effects of symptoms." 1996 WL 374184, at *5 (1996).

Therefore, the ALJ's RFC was accurate and supported by substantial evidence.

### 2. Borderline Age Situation

Plaintiff argues that it was error for the ALJ to fail to consider her borderline age situation in assessing her RFC. Plaintiff was 49 years, five months, and twenty-eight days old on the date last insured. (Dkt. 18, at p. 16). She was six months and two days away from a "person closely approaching advanced age" (50-54). Further, plaintiff claims that applying the "person closely approaching advanced age" category would result in a sedentary RFC, which would then lead to a finding of "disabled" because she would be in the "sedentary work" category. Plaintiff cites Medical Vocational Rule 201.14 directing a finding of "disabled" with an unskilled sedentary RFC when the claimant is a person closely approaching advanced age and has previous work of a semiskilled nature. (*Id.* at p.

14-15).  She does not provide argument otherwise establishing that she would have been found disabled in the higher age category.

The Commissioner responds that that plaintiff must establish that she can only do sedentary work in order to be considered at the "closely approaching advanced age" category.  (Dkt. 19, at p. 10).

The ALJ did not address a borderline age situation.  However, 20 C.F.R. § 1563(b) "does not impose on ALJs a *per se* procedural requirement to address borderline age categorization in every borderline case."  *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008); *Henry v. Comm'r of Soc. Sec.*, 678 Fed. Appx. 392, 395 (6th Cir. 2017).  The SSA provides guidance on the application of age categories:

> When we make a finding about your ability to do other
> work under § 404.1520(f)(1), we will use the age
> categories in paragraphs (c) through (e) of this section.
> We will use each of the age categories that applies to you
> during the period for which we must determine if you are
> disabled.  We will not apply the age categories
> mechanically in a borderline situation.  *If you are within
> a few days to a few months of reaching an older age
> category, and using the older age category would result
> in a determination or decision that you are disabled, we
> will consider whether to use the older age category after
> evaluating the overall impact of all the factors of your
> case*.

20 C.F.R. § 404.1563 (emphasis added).  The Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX), while merely

persuasive, provides further guidance on this issue. *See Lasorda v. Comm'r of Soc. Sec.*, 2017 WL 126760, at *7, n. 4 (W.D. Mich. Apr. 6, 2017) (citing *Estep v. Astrue*, 2013 WL 212643, at * 11 (M.D. Tenn. Jan. 18, 2013) (collecting cases)).

HALLEX I-2-2-42[2] provides:

> SSA does not have a precise programmatic definition for the phrase "within a few days to a few months." The word "few" should be defined using its ordinary meaning, e.g., a small number. Generally, SSA considers a few days to a few months to mean a period not to exceed six months.

> To decide the first part of the test, ALJs will assess whether the claimant reaches or will reach the next higher age category within a few days to a few months after . . . the date last insured.

As plaintiff states, she was six months and two days away from the higher age category. If a claimant is a few days or few months away from the higher age category, the ALJ would then have to determine whether applying the new age category would result in a decision of "disabled." HALLEX, at I-2-2-42. In *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397-99 (6th Cir. 2008), the Sixth Circuit considered a prior version of HALLEX, at II-5-3-2, that endorsed a "sliding scale approach" requiring the claimant to show progressively more additional vocational adversity(ies) to support the use of the higher age category. This approach is still

---

[2] Effective March 25, 2016, the SSA moved the guidance on borderline age situations from HALLEX II-5-3-2 to HALLEX I-2-2-42 and I-3-3-25.

endorsed.  *Lasorda v. Comm'r of Soc. Sec.*, 2017 WL 1276760, at *7 (W.D. Mich.

Apr. 6, 2017).

> The Sixth Circuit noted that HALLEX provided
> examples of "additional vocational adversities" to
> consider when deciding whether to apply the higher age
> category.  These included being barely literate in English,
> having only a marginal ability to communicate in
> English, and having work experience in one isolated job
> and one isolated industry or work setting.

*Lasorda*, 2017 WL 126760, at *7 (citing HALLEX at II-5-3-2).  Another example

is "an additional impairment that infringes on the claimant's remaining

occupational base."  *Bowie*, 539 F.3d at 397.  In *Henry*, the Sixth Circuit held that

the claimant did not present a borderline age situation when she was just over six

months away from the next age category at her date last insured and the record did

not show that she suffered from additional vocational adversities significant

enough to require the ALJ to consider a borderline age situation.  768 Fed. Appx.

at 395.

Even assuming plaintiff is a "few months" away from the next age category,

she is unable to establish that she suffered additional vocational adversities.

Plaintiff has not demonstrated that she had significant additional vocational

adversities at six months and two days away from the next category that would

require the ALJ to discuss a borderline age situation.  As noted in *Lasorda*, the

Sixth Circuit has found no error where the period of time was shorter than six

months and the claimant had significant vocational adversities.  2017 WL 126760, at *7 (collecting cases).  In *Caudil v. Comm'r of Soc. Sec.*, 423 Fed. Appx. 510 (6th Cir. 2011), the court found no error where claimant's assertions of limitations were given little weight, claimant worked in an isolated industry, and was barely literate.  Here, plaintiff is literate and was not in one isolated job (she worked as a credit processor, at a Dollar Tree, and at a bowling alley).  (Tr. 38).  In *Lasorda*, there was no error where the claimant was six months and eight days from the next age category and the medical evidence did not support her claim of needing a cane to ambulate.  2017 WL 126760, at *7.  The court found that the claimant did not demonstrate any significant additional vocational adversities because the claimant's claim of needing a cane was not credited and she was otherwise capable of light work.  *Id.* at *2.  Here, the medical evidence does not support plaintiff's assertions of pain and further limitations and she has not demonstrated significant additional vocational adversities prior to her DLI.  As shown in the analysis above, the light work RFC was appropriate here.

This Court finds that, under the facts of this case, it was procedurally acceptable for the ALJ not to specifically address a borderline age situation.  At six months and two days away, plaintiff was hardly on the cusp of entering the next age category.  Further, the record does not establish progressively more additional

vocational adversities prior to the DLI.  The record provides substantial evidence to support the light work RFC.

### 3.    *Post-hoc* Rationalization

Finally, in plaintiff's reply brief she states that the Commissioner has provided the Court with impermissible *post-hoc* rationalization.  (Dkt. 20, at p. 2). She does not support this assertion with argument.  Plaintiff is correct that the Commissioner cannot rely on *post-hoc* rationalization.  *See Christephore v. Comm'r Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a de novo review of the evidence or to rubber stamp the ALJ's decision.  The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence.  Moreover, it is the ALJ's rationale that is under review, not defense counsel's.").  The Court did not rely on appellate counsel's rationalization of the ALJ decision.  *See Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (The court "may not accept appellate counsel's *post hoc* rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)); *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991) ("Courts are not at liberty to speculate on the basis of an administrative agency's order. . . .  The court is not free to accept

'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'").

## IV. CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is **DENIED**, and defendant's motion for summary judgment is **GRANTED**, and the findings of the Commissioner are **AFFIRMED**.

**IT IS SO ORDERED**.

Date: February 26, 2018          s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 26, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov